UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE: | Chapter 13 |
| SHANTA K. SUKHU, | Case No.: 17-11890-CGM-13 |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ALBERTO AMBESI AND THE BOARD OF MANAGERS OF THE HUDSON VIEW CONDOMINIUM'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

TO:   THE UNITED STATE BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK, CHIEF JUDGE CECELIA G. MORRIS

Alberto Ambesi ("Ambesi") and the Board of Managers of the Hudson View Condominium (the "Condominium") file this motion for relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code (the "Motion"). Pursuant to the Motion, Ambesi and the Condominium (collectively, the "Movants") seek relief from the automatic stay in the above-captioned case to proceed with the merits of the Lawsuit (as defined below) and for the Condominium to proceed with a foreclosure action on its common charge lien. Ambesi and James Wu, the President of the Board of Managers of the Condominium, submit affidavits (the "Ambesi Affidavit" and the "Wu Affidavit," respectively), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.   The Bankruptcy Court should find that cause exists to lift the stay to permit Ambesi to proceed with the merits of the lawsuit filed by Ambesi against the debtor Shanta Sukhu ("Sukhu" or "Debtor") in the litigation styled *Ambesi, et al v. Shanta Sukhu, et al*, in the Supreme Court of the State of New York, County of New York, Index No.: 160678/2013 (the "Lawsuit"). Ambesi does not seek relief from the stay to collect damages from the Debtor. However, to the extent New York State Court rules in favor of Ambesi and awards damages,

Ambesi will seek treatment of such judgment in this action.

2.  Moreover, the Condominium filed a common charge lien against the Debtor in January 2021, in the amount of $6,842.26, which is attributable to the common charges, assessments, and late charges due by the Debtor to the Condominium (the "Lien"). To date, the Lien amount remains unpaid and additional charges are accruing. The Condominium seeks to file a foreclosure action with respect to the Lien.

3.  The within action (the "Sukhu Bankruptcy") has been pending since July 2017 with little to no case development, and Ambesi has accordingly been stayed from proceeding against Sukhu in the Lawsuit, which has been pending since November 2013, and the Condominium has been estopped from bringing an action to foreclose on the Lien. In the meantime, Sukhu continues to harass and defame Ambesi and interfere with the conducting of Ambesi's daycare center, including harassing the daycare center staff and customers and taking inappropriate photographs of the children at the daycare, and continues to neglect her common charge payments to the Condominium.

4.  Sukhu cannot be permitted to use the bankruptcy as a shield from the Lawsuit and arbitrarily delay creditors, such as Ambesi, Happy Sun Daycare, and the Hudson View Condominium, from exercising their legitimate rights.

5.  Given the uncertainty regarding the status of the dismissal of the Sukhu Bankruptcy[1], and for the reasons stated above and further set forth at length herein, Ambesi respectfully requests that the Bankruptcy Court enter the Proposed Order lifting the automatic stay so that Ambesi may proceed with the merits of the Lawsuit and the Condominium can

---

[1] Chapter 13 Trustee, Krista M. Preuss, filed a Motion to Dismiss on March 23, 2021, which was originally scheduled to be heard on April 29, 2021, subsequently adjourned to June 24, 2021, then adjourned, to June 24, 2021, August 5, 2021, September 9, 2021, October 7, 2021, November 4, 2021, and most recently, adjourned to December 9, 2021.

proceed with a foreclosure action.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7. Shanta Sukhu and Alberto Ambesi are neighbors in the Hudson View Condominium, located at 540 West 163rd Street, New York, NY 10032 (the "Condominium").

8. In January 2012, Ambesi began the operation of Happy Sun Daycare, a registered and licensed family day care center (the "Daycare"). The use of Ambesi's apartment for the Daycare is in compliance with the Condominium's house rules and was approved by board vote in June 2013.

9. Beginning in January 2013, and continuing today, Sukhu verbally attacked and assaulted a daycare child and her guardian. In February 2013, Sukhu, and her ex-husband Lorjan Agalliu,[2] posted a defamatory sign in the building lobby stating that the daycare center was in violation of the NYC DOB and then accosted the Daycare customers while pointing towards the defamatory posting.

10. The New York Supreme Court issued a preliminary injunction in February 2014 which enjoined and restrained Sukhu and Agalliu from: (i) harassing, threatening, or verbally assaulting Ambesi, his wife, and the children or their guardians, who attend Happy Sun Daycare; (ii) preventing children and their guardians from entering Happy Sun Day Care; and (iii) having any contact with Ambesi, his wife, children or their guardians who attend Happy Sun Day Care.

---

[2] Though not named in the Sukhu Bankruptcy, Lorjan Agalliu was listed as "Debtor 2" in the most recent Schedule E/F filings by the Debtor, dated January 28, 2021.

A true and correct copy of the "Preliminary Injunction" is annexed hereto as Exhibit A.

11. Despite the Preliminary Injunction, over the years, Sukhu repeatedly threatened Ambesi, Happy Sun Daycare's customers and employees, the Board of the Condominium, and other unit owners and tenants of the building. Many of the Daycare's children were removed by their parents citing the erratic behavior of Sukhu.

12. In 2019, Sukhu took unauthorized photographs of the students of the Daycare and of their parents, verbally assaulted a staff member, and deliberately left rubbish, including a dead rat, outside of the Daycare entranceway as an intimidation tactic. Additionally, Sukhu has promulgated false information to the insurance carriers for the Condominium, resulting in the carrier refusing to provide coverage to the Condominium, or alternatively, charging the Condominium exorbitant sums for coverage.

13. Sukhu has further targeted her verbal attacks on counsel for Ambesi and the Condominium, sending volatile emails filled with threats and lies. Notably, however, Sukhu acknowledged in one of her emails that her father was in talks with Rushmore Lending to pay off loan amounts owed by Sukhu and further stated that her father's cash is sitting in the bank, while her mortgage remains unpaid, and the bank continues to pay her property insurance.

14. Sukhu further divulged that her plan is to occupy her unit for the next ten years while the Lawsuit, the Bankruptcy action, and any further actions, such as foreclosure procedures, are ongoing, at which time she plans to retain another attorney to fight for another three years to keep her home. True and correct copies of the emails from Shanta Sukhu, dated February 15, 2021, March 5, 2021, March 9, 2021, July 9, 2021, August 23, 2021 are annexed hereto as Exhibit B.

15. As detailed in her emails, Sukhu plans to stay in her home indefinitely and refuses

to leave. *See* Exhibit B.

16. These emails demonstrate Sukhu's bad faith filing for bankruptcy is an effort to avoid paying her creditors, not to mention her volatility. Without the Bankruptcy Court lifting the automatic stay, Sukhu will continue to drag out her bankruptcy, further delaying a resolution of the Lawsuit, while she continues to breach the Preliminary Injunction.

17. Additionally, beginning in August 2019 and continuing today, Sukhu has failed to remit the full value of her common charge assessments, prompting the Condominium to file a common charge lien in the amount of $6,842.26, on January 26, 2021. The outstanding assessments have accrued since.

18. The Sukhu Bankruptcy has made little to no progress since its filing in 2017. The Movants request that they no longer have to wait, and instead, Ambesi be permitted to seek judgment in the Lawsuit, including obtaining a permanent injunction against Sukhu and liquidating his claims for damages, which would be treated in the respective bankruptcy action (to the extent the matter is still pending), and the Condominium be permitted to foreclose on the Lien.

## REQUESTED RELIEF

19. Pursuant to Section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001, Movants request entry of an order, substantially in the form attached hereto (the "Proposed Order") (i) lifting the automatic stay to permit Ambesi to proceed with the Lawsuit on the merits; (ii) lifting the automatic stay to permit the Condominium to file a foreclosure action; and (iii) granting related relief.

## BASIS FOR RELIEF

20.  The Bankruptcy Code provides that a bankruptcy petition operates as a stay of the commencement or the continuation of a proceeding against a debtor.  11 U.S.C. § 362(a).  The Court may grant a party relief from the automatic stay under Section 362(d) of the Bankruptcy Code, which, in pertinent part, provides:

> On a request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [….]

21.  As set forth in the Bankruptcy Code, the party seeking relief from the automatic stay is required to make a *prima facie* showing that it is entitled to relief from the stay. *See* 11 U.S.C. § 362(g). Once the movant alleges facts demonstrating a legal entitlement to the relief sought, the burden then shifts to the debtor to demonstrate that the automatic stay should be continued.  *See* 11 U.S.C. § 362(g); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  As explained below, cause exists to lift the stay to permit Movants to proceed with their respective actions.

22.  Section 362(d)(1) of the Bankruptcy Code provides that a party in interest may seek relief from the stay. Ambesi and the Condominium have pre-petition and post-petition claims against the Debtor and are therefore parties in interest. *See* 11 U.S.C. § 1109(b) (a "party in interest" includes a "creditor"); *see In re Xenon Anesthesia of Texas, P.L.L.C.*, 698 Fed. App'x 793, 794 (5th Cir. 2017) (a party in interest "generally means anyone who has a legally protected interest that could be affected by the bankruptcy case.") (internal citation and quotation omitted). The Condominium is a party in interest because it has a legally protected interest in Sukhu's apartment, which will certainly be affected by Sukhu's Bankruptcy.

23. Though not defined in Section 361 of the Bankruptcy Code, Courts have recognized that "cause" for relief from the automatic stay is intentionally broad and flexible, allowing the bankruptcy courts to respond equitably to fact-specific situations. *See In re Sonomax Indus., Inc.*, 907 F.2d at 1288 ("[T]he inquiry called for by motions to lift the automatic stay are very fact-specific and involve the weighing of numerous factors peculiar to the particular case."); *In re Project Orange Assoc., LLC*, 423 B.R. 89, 103 (Bankr. S.D.N.Y. 2010); *In re McWolle Dev. Corp.*, No. 18-72623, 2018 Bankr. LEXIS 3899, at *6 (Bankr. E.D.N.Y. Dec. 10, 2018).

24. The Second Circuit considers twelve (12) factors in determining whether to lift the stay. *In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (adopting the twelve-factor test from *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)). The twelve (12) factors include:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves the third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors or other interested parties;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of the judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on parties and the balance of harms.

25. In some cases, courts may consider an additional factor of "whether the automatic stay is being used to shield misconduct." *In re Anton*, 145 B.R. 767, 770 (E.D.N.Y. 1992). "Not all of these factors will be relevant in every case…. And the court need not give equal weight to

each factor." *In re Taub*, 438 B.R. 39, 45 (Bankr. E.D.N.Y. 2010); *see also In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (utilizing only four of the factors). Instead, the court "should consider the particular circumstances of the case." *In re Taub*, 438 B.R. at 45. Moreover, courts have found cause to lift the stay based on one factor alone. *See, e.g., In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) ("The factor judicial economy may be considered in deciding whether to lift the automatic stay; in fact, a decision to lift the stay may be upheld on this ground alone.") (citation omitted); *cf. In re Sonnax Indus.*, 907 F.2d at 1286 (stating that "the decision of whether to lift the stay is committed to the discretion of the bankruptcy judge.") (internal citations omitted). The "Bankruptcy Court has ***the wide discretion*** to grant the relief and lift the automatic stay." *In re Anton*, 145 B.R. at 770 (citing *In re Sonnax Indus.*, 907 F.2d at 1280) (emphasis added).

26. Applying the above standards, it is clear that cause exists to lift the automatic stay so that Ambesi can proceed with the Lawsuit and the Condominium can foreclose on the Lien.[3]

I. *Application of Sonnax Factors*

27. If the stay is lifted to allow Ambesi to proceed with the Lawsuit, the New York State Court can completely resolve the Complaint and liquidate Ambesi's damages. Accordingly, the first of the *Sonnax* factors weighs in favor of relief from the automatic stay.

28. As long as a proceeding does not interfere with the bankruptcy case, this factor may still weigh in favor of relief from the automatic stay. *See e.g., In re Taub*, 438 B.R. at 46 (finding that factor two weighed in favor of relief from the stay although the matter was connected to the bankruptcy case).

29. Lifting the stay to allow Ambesi to proceed with the Lawsuit will not interfere

---

[3] *Sonnax* factors 3, 4, 5, 6, 8, and 9 are not addressed herein because they are not relevant to this matter. The Preliminary Injunction does not involve the Debtor as a fiduciary, does not involve a specialized tribunal, does not involve insurance, is not primarily related to third parties, and would not result in a judicial claim or lien.

with the Sukhu Bankruptcy because the Debtor is not seeking to reorganize. *Compare In re Residential Capital, LLC*, Case No. 12-12020, 2012 Bankr. LEXIS 3641, at *17 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying stay relief when the litigation would interfere with rehabilitation efforts, among other reasons). Dismissal of the Sukhu Bankruptcy has already been filed by the Chapter 13 Trustee, and the Court is scheduled to hear the application on December 9, 2021.

30. Allowing the Movants to proceed does not interfere with the Debtor's rehabilitation efforts, even if the motion to dismiss is ultimately withdrawn by the Trustee. Enforcing the Preliminary Injunction will only require Sukhu to comply with a prepetition state court order and foreclosing on the Lien will only encourage the prompt payment of common charge assessments required by all unitholders of the Condominium. *Compare In re Sonnax Indus., Inc.*, 907 F.2d at 1286-87 (noting that this factor weighed against relief from the stay when the debtor would be prohibited from doing any business whatsoever).

31. Likewise, proceeding with the Lawsuit will not interfere with the Sukhu Bankruptcy because Ambesi does not seek to collect on any judgment – rather, Ambesi seeks only relief to enforce the Preliminary Injunction and liquidate his claims before the New York State Court for treatment in the Sukhu Bankruptcy (if the action is still pending at the time judgment is entered).

32. With respect to the *Sonnax* seventh factor - whether litigation in another forum would prejudice the interests of other creditors or other interested parties - the risk of prejudice to creditors is minimized due to the narrow scope of the relief that Ambesi seeks. Ambesi seeks only to proceed with the Lawsuit to enforce the Preliminary Injunction and liquidate his damages. Accordingly, this factor also weighs in favor of relief from the automatic stay.

33. Under the tenth *Sonnax* factor, the New York State Court is the most appropriate and efficient forum to proceed with the Movants' matters in the interests of judicial economy and for an efficient resolution. The Lawsuit was filed in the New York State Court, concerns issues of New York State law, and has been pending since 2013. The New York State Court is also familiar with the facts and the underlying dispute. The Condominium is located in New York and concerns a condominium unit owner's failure to pay common charges. This factor weighs in favor of relief from the automatic stay for both Ambesi and the Condominium. *See e.g., In re Project Orange Assocs., LLC*, 432 B.R. at 107 (determining that state law issues are best resolved by a state court in a lift stay analysis).

34. While the parties are not ready for trial in the Lawsuit, Ambesi has served discovery demands and has made progress towards preparing for trial. Sukhu hides behind her bankruptcy filing to avoid responding to the discovery demands. Notwithstanding the same, Ambesi submits that the eleventh *Sonnax* factor weighs in favor of relief from the automatic stay.

35. Lastly, the twelfth *Sonnax* factor – impact of the stay on parties and the balance of harms – weighs in favor of relief from the stay. As described above, Sukhu continues to violate the Preliminary Injunction by harassing Ambesi, Happy Sun Daycare employees and its customers, and interfered with the operations of the Daycare. Sukhu's common charges from August 2019 remain unpaid and additional sums will become due in the future, with no expectation of payment to the Condominium. The Sukhu Bankruptcy has been pending for almost four years, with Sukhu having taken no steps towards confirming a Chapter 13 plan. Sukhu has demonstrated her true intentions through her emails – to spitefully delay her bankruptcy to avoid paying her creditors. As such, Ambesi has been stayed from taking any action to enforce the Preliminary Injunction or liquidate his claims in the New York State Court

and the Condominium has been stayed from foreclosing on the Lien, even though there has been hardly any activity in the Sukhu Bankruptcy. Allowing the Lawsuit to proceed will merely allow Ambesi to obtain a judgment enforcing the Preliminary Injunction and liquidating his claims to be treated in accordance with the priority scheme of the Bankruptcy Code in the pending Sukhu Bankruptcy.

36. Sukhu may argue that the litigation costs and time spent away from the bankruptcy case to participate in the Lawsuit and the anticipated foreclosure action, warrant leaving the stay in place. "Litigation costs to a bankruptcy estate," however, "do not compel a court to stay relief." *In re Santa Clara Cty. Fair Ass'n, Inc.*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995) (upholding a finding modifying the stay to allow litigation to proceed); *see also In re Anton*, 145 B.R. at 770 (lifting the stay and stating that "[t]he cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay") (internal citations omitted).

37. Notably, Sukhu is representing herself *pro se* in the Lawsuit and thus is not exactly incurring the litigation costs. Moreover, Ambesi is harmed by Sukhu's violation of the Preliminary Injunction and the New York State Court's Orders. Sukhu is attempting to use her bankruptcy case as a shield to prevent Movants from protecting their interests, which is an improper use of the bankruptcy process. Accordingly, the harm to Movants from allowing Sukhu to continue violating the Preliminary Injunction with impunity and neglect her payments to the Condominium, significantly outweighs the harm (if any) to Sukhu from lifting the stay.

II. *Whether the Automatic Stay is being Used to Shield Misconduct*

38. Sukhu has had the benefit of the automatic stay since 2017 but has made little to no progress. Nonetheless, as noted above and in the Affirmation of Christopher Travis submitted

with this Motion, Sukhu has the ability to resolve her debts, but vindictively chose not to and intends to drag out the bankruptcy action and the Lawsuit for the next ten years.

39. Additionally, Sukhu has engaged in post-petition activities in violation of the New York State Court's Preliminary Injunction to the detriment of Ambesi. In particular, since filing her bankruptcy petition, Sukhu has, among other things, harassed Ambesi and the Happy Sun Daycare staff and customers and caused the Condominium's insurance carrier to drop its coverage of the building. Thus, this additional factor weighs in favor of lifting the stay.

40. For all of the foregoing reasons, Movants submit that the *Sonnax* factors weigh in favor of granting relief from the automatic stay for the purpose of proceeding on the merits of the Lawsuit, so that Ambesi may seek judgment from the New York State Court enforcing the Preliminary Injunction and liquidating Ambesi's claims and proceeding with the Condominium's foreclosure action.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3) STAY

41. Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), Movants request that the Court direct that any order modifying the stay is immediately enforceable and not subject to the customary 14-day stay. Because Sukhu is not affected by the modification of the automatic stay to allow Ambesi to pursue enforcement of the Preliminary Injunction and liquidation of his claims, there is no purpose for a 14-day stay after the entry of the Proposed Order. Conversely, denying the request could subject Ambesi to prejudice from additional delay.

## NOTICE

42. Notice of this Motion will be given to: (i) the Debtor, Shanta Sukhu, by and through her counsel; (ii) the United States Trustee for the Southern District of New York; and (iii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy

Rule 2002 and Local Bankruptcy Rule 2002-1(d). In light of the nature of the relief requested, Movants submit that no other or further notice is required or needed under the circumstances.

## CONCLUSION

WHEREFORE, Alberto Ambesi and the Board of Managers of the Hudson View Condominium respectfully request that the Court enter the Proposed Order: (i) modifying and lifting the automatic stay to permit Albert Ambesi to proceed with the Lawsuit and for the Condominium to proceed with filing a foreclosure action; and (ii) granting such other further relief as is just and proper.

Dated: New York, New York
November 24, 2021

TRAVIS LAW PLLC

By: _____
Christopher R. Travis
*Attorney for Alberto Ambesi and the Board of Managers of the Hudson View Condominium*
80 Maiden Lane, Suite 304
New York, New York 10038
Phone (212) 248-2120

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I caused a copy of the foregoing document to be served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case.

/s/
Christopher R. Travis