NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                          :      Chapter 13

In re:
                                                          :      Case No. 17-11890 (CGM)

Shanta K. Sukhu,

                           Debtor.
-------------------------------------------------------------X

**MEMORANDUM DECISION DENYING REQUEST TO LIFT THE
AUTOMATIC STAY WITH REGARDS TO HUDSON VIEW CONDOMINIUM,
GRANTING REQUEST TO LIFT THE AUTOMATIC STAY WITH REGARDS
TO ALBERTO AMBESI, AND ORDERING AN EVIDENTIARY HEARING
WITH REGARDS TO SHANTA K. SUKHU'S CROSS-MOTION FOR
CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY.**

**A P P E A R A N C E S :**

Edwin Arnes
Edwin Arnes Attorney Firm P.C.
6143 186 Street Suite #453
Fresh Meadow, NY 11365
*Attorney for Debtor*
Appearing via zoom

Christopher R. Travis
Travis Law PLLC
80 Maiden Lane, Suite 304
New York, New York 10038
*Attorney for Alberto Ambesi and the Board of
Managers of the Hudson View Condominium*
Appearing via zoom

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Shanta K. Sukhu (the "Debtor") filed for bankruptcy under chapter 13 on July 7, 2017. Pet., 1, ECF[1] No. 1. The Court confirmed the Debtor's plan on March 15, 2018 and amended the Debtor's plan in December 2021. Confirm. Order, ECF No. 35; Order Am. Plan, ECF No. 102. On November 24, 2021, Hudson View Condominium (the "Condominium") and Alberto Ambesi ("Ambesi", collectively, the "Movants") together filed a motion for relief from stay (the "Motion to Lift Stay") pursuant to 11 U.S.C. § 362(d).[2] Mot. for Relief from Stay, 1, ECF No. 94. The Condominium moved for relief to foreclose on its January 2021 common charge lien, arguing that the Debtor has not paid condominium fees since August of 2019. *Id.* at 5. Ambesi is currently suing the Debtor in the Supreme Court of the State of New York, County of New York (the "State Lawsuit").[3] *Id.* Ambesi moved for relief from stay to continue this State Lawsuit against the Debtor. *Id.* The Debtor opposes the Motion to Lift Stay in both parts and filed a cross-motion (the "Cross-Motion") alleging that Ambesi, with knowledge of the automatic stay, willfully continued pursuing the State Lawsuit after the order of relief was entered. Attorney Affirm. in Supp. of Cross-Mot. and Opp'n ("Debtor's Cross-Mot. and Opp'n"), 2, ECF No. 103. The Debtor requests that the Court deny the Motion to Lift Stay, find that Ambesi violated the automatic stay, and award expenses and attorney's fees. *Id.* at 1–2.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Loretta A. Preska, dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters

---

[1] All references to "ECF" are to this Court's electronic docket, which may be viewed at www.pacer.gov.
[2] Unless otherwise indicated, all following citations to statutory sections refer to Title 11, United States Code.
[3] State Lawsuit is stylized *Ambesi, et al v. Shanta Sukhu, et al.* Index Number is 160678/2013. Mot. for Relief from Stay, 1, ECF No. 94.

concerning the administration of the estate) and 28 U.S.C. § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay).

## Background

The Condominium is located at 540 West 163rd Street, New York, New York, 10032. Pet. at 15. The Debtor lives in apartment 1A in the Condominium. *Id.* at 2. Ambesi represents that he is the Debtor's neighbor. Mot. for Relief from Stay, Aff. of Alberto Umbesi ("Ambesi Aff."), 1, ECF No. 94.

Since January 2012, Ambesi has allegedly run an approved and licensed daycare[4] facility, Happy Sun Daycare, (the "Daycare") from his apartment. *Id.*; Debtor's Cross-Mot. and Opp'n, Ex. 1 Compl. ("State Lawsuit Compl."), at 3, ECF No. 103. In November 2013, Alberto Ambesi, Elisabeth Ambesi, and the Daycare (collectively, the "State Plaintiffs") filed suit against both the Debtor and Lorjan Agalliu (collectively, the "State Defendants") in the Supreme Court of the State of New York, County of New York (the "State Court"). State Lawsuit Compl. at 1. The State Lawsuit alleges claims of harassment, defamation, trade libel and tortious interference with contract. Mot. for Relief from Stay, Ex. Prelim. Inj., 2, ECF No. 94.

On February 26, 2014, the State Court issued a preliminary injunction restricting the State Defendants' contact with the State Plaintiffs. *Id.* at 3. Ambesi alleges that in August 2019 the Debtor violated the preliminary injunction when she "took unauthorized photographs of the students of the Daycare and of their parents, verbally assaulted a staff member, and deliberately left rubbish, including a dead rat, outside of the Daycare entranceway." Ambesi Aff. at 1.

---

[4] Happy Sun Daycare is alleged to be registered and licensed by the New York State Office of Family Services, Registration Number 00553232FDC. State Lawsuit Compl. at 2, ECF No. 103. Ambesi asserts that the Daycare complies with the Condominium House Rules and was approved by a vote of all Condominium shareholders in June of 2013. *Id.* at 6.

Ambesi asserts that in February 2016 the State Court inadvertently marked the State Lawsuit "settled" instead of "marked off" the State Court's calendar. Opp'n to Cross-Mot. for Contempt and in Supp. of Mot. for Relief from Stay ("Movants' Opp'n to Cross-Mot."), 3, ECF No. 105. In November 2019, after the Debtor filed for bankruptcy, the State Plaintiffs filed a motion in the State Court to have the State Lawsuit restored to the State Court's calendar (the "Motion to Restore"). *Id.* In March 2020, the State Court restored the State Lawsuit to the calendar. Movants' Opp'n to Cross-Mot., Ex. C Mar. 2020 Order, ECF No. 105.

According to Ambesi, in June of 2020, the Debtor fired her attorney and began to represent herself in the State Lawsuit. *Id.* at 3. In July 2020, the Debtor replied to an email from the State Plaintiffs' counsel explaining that she was in bankruptcy. Debtor's Cross-Mot. and Opp'n, Suppl. Debtor's Aff. Supp. and Opp'n ("Debtor's Aff."), 2, ECF No. 103; Debtor's Cross-Mot. and Opp'n, Ex. 6 Debtor's Autostay Notice, ECF No. 103. In February 2021, the Daycare filed a proof of claim in this bankruptcy proceeding. *See* Claim No.[5] 3-1, 1–3 (filed by the Debtor); *see also* Movants' Opp. to Cross-Mot., 4 (stating "the Daycare filed its proof of claim").

On March 9, 2021, the State Court held a pre-trial conference between the parties. Debtor's Cross-Mot. and Opp'n, Ex. 7 Supreme Court Appearances, ECF No. 103. At this conference the Debtor asserts that she informed the State Court that she was in bankruptcy. Debtor's Affidavit at 2. The State Court stayed the State Lawsuit at that hearing. *Id.*; Ex. 7 Supreme Court Appearances.

In December 2014, the Condominium filed a common charge lien (the "2014 Lien") against the Debtor and Lorjan Agalliu for failure to pay condominium fees during the years 2013 and 2014. *See* Claim No. 9-2, Attachments to POC, 20–23. In November 2016, the

---

[5] Proofs of claim filed in Debtor's case are available on the claims' register for case number 17-11890

Condominium received a judgment of foreclosure and sale against the Debtor and Lorjan Agaillu for failure to pay condominium fees from May 2013 through July 2016. *See Id.* at 7–16. The Debtor continued to accrue condominium fees, interest, and legal fees due to the Condominium as prepetition arrears up to the filing of her bankruptcy. *See* Claim No. 9-2, Itemization, 1. In November 2017, the Board of Managers of Hudson Valley Condominium filed a secured claim in this bankruptcy proceeding. *See* Claim No. 9-1, 1; Claim No. 9-2, 1 (amended December 2017). The proof of claim lists the Debtor's condominium unit as the security interest and notes that the claim was secured by a judicial lien and common charges lien. *Id. at* 1–2.

The Condominium asserts that in August 2019 the Debtor stopped paying her postpetition condominium fees. Movants' Opp. to Cross-Mot. at 3. the Condominium states it filed a common charge lien in January 2021 (the "2021 Lien") [6] against the Debtor for missed common charges, assessments and late charges owed since August 2019. Mot. for Relief from Stay at 5. The Condominium wishes to lift the stay in order to foreclose on the Debtor's condominium unit. *Id.*

## Discussion

Before the Court are two motions to lift the stay[7] and one Cross-Motion for an order of contempt for violation of the automatic stay. All these motions were made pursuant to § 362. The Court will in turn address the alleged violation of the automatic stay, Ambesi's request to lift the stay, and finally the Condominium's request to lift the stay.

I. *Debtor's Cross-Motion for Violation of the Automatic Stay*

The Debtor filed the Cross-Motion against Ambesi for willful violation of the automatic stay alleging that Ambesi, with knowledge of the bankruptcy, continued pursuing the State

---

[6] The Condominium did not provide any documents supporting the assertion that it filed a lien.
[7] While Ambesi and the Condominium filed one motion and intertwined the arguments, this Court will untangle the arguments and address the facts and law with respect to each party individually.

Lawsuit in State Court. Debtor's Cross-Mot. and Opp'n at 3–5. The Debtor filed this Cross-Motion pursuant to §§ 362(a)(1) and (a)(3). The Debtor seeks $4000 in litigation expenses plus attorney's fees for the Cross-Motion pursuant to § 362(k). *Id.* at 5.

The entry of an order for relief stays the continuation "of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case under this title." § 362(a)(1). The entry of an order for relief also stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). The Debtor must demonstrate that a willful violation of the automatic stay occurred by the preponderance of the evidence. *In re Laskaratos*, 605 B.R. 282, 299 (Bankr. E.D.N.Y. 2019). Section 362(k) provides that an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees. § 362(k)(1).

A willful violation of the automatic stay requires that an intentional act be performed while there is knowledge of the stay. *In re Solis*, 137 B.R. 121, 132 (Bankr. S.D.N.Y. 1992). To find willfulness, a court need only determine that a party performed an act that violates the stay with a general intent to perform the act and not the specific intent to violate the stay. *See In re Dominguez*, 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004). When courts find that a willful violation of the stay has occurred, courts are mandated to assess actual damages. *In re Weidenbenner*, 521 B.R. 74, 84 (Bankr. S.D.N.Y. 2014). Courts do not assess damages when the violation is a mere technical violation of the stay. *In re Kline*, 420 B.R. 541, 548 (Bankr. D.N.M. 2009). A technical violation occurs when the act violating the stay is accomplished without knowledge of the bankruptcy. *Id.*

Courts have concluded that the continuation of a lawsuit with knowledge of the stay is a willful violation of the automatic stay. *In re Ionosphrere Clubs, Inc.*, 111 B.R. 423, 432–34 (Bankr. S.D.N.Y. 1990). Courts have also concluded that mere ministerial acts performed in relation to a continuing lawsuit do not violate the automatic stay. *In re Soares*, 107 F.3d 969, 973–74 (1st Cir. 1997) (citing *Rexnard Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994)). A ministerial act is defined as "one that is essentially clerical in nature." *In re Chavannes*, No. 13-18075, 2014 WL 1917681 at *9 (Bankr. E.D. Pa. May 13, 2014).

A party is required to reverse an action that technically violates the stay when knowledge of the stay is obtained, else that party will be held to have violated the stay upon obtaining that knowledge. *See In re Voll*, 2013 WL 5946113, No. 13-31058 at *2 (Bankr. N.D.N.Y. Nov. 6, 2013) (citing *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (citing cases)); *In re Kline*, 420 B.R. 541, 548 (Bankr. D.N.M. 2009); *see also In re DePoy*, 29 B.R. 471, 478 (Bankr. N.D. Ind. 1983) (holding the defendant committed a violation of the automatic stay "by failing to put a halt to the state court eviction").

Knowledge of the stay can be inferred from knowledge of the bankruptcy filing and participation in the bankruptcy proceedings. *In re Sklar,* 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021); *Jones v. USCB, Inc. (In re Jones)*, Adv. No. 15-01092, 2016 WL 936914, at *1 (Bankr. N.D. Cal. March 10, 2016); *In re Solis*, 137 B.R. at 132. Knowledge does not have to come from formal processes. *In re Flack*, 230 B.R. 155, 163 (Bankr. S.D. Ohio 1999). Courts will impute knowledge of a bankruptcy when a party's non-bankruptcy attorney is informed of the bankruptcy. *Lefkowitz v. Najjar (In re Najjar)*, Adv. No. 06-01955, 2007 WL 1395399, *4 (Bankr. S.D.N.Y. May 11, 2007) (citing cases). Courts will even assume knowledge of the

bankruptcy where a creditor has sufficient facts to cause a reasonably prudent person to make further inquiry. *In re Flack*, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999).

The Debtor argues that Ambesi performed an act that violated the stay when he filed the Motion to Restore the State Lawsuit in State Court in November 2019. Ambesi counters that the act of restoring a case to the calendar when it was mistakenly marked as settled is a ministerial act. The Court reviewed Ambesi's Motion to Restore and found Ambesi's description of this Motion to Restore to be incomplete and lacking in veracity. This allegedly ministerial Motion to Restore requested that the State Court issue the following order:

> (i) Restoring this matter to the trial calendar, pursuant to CPLR § 3404; (ii) Holding Defendants in contempt of Court for their refusal to abide by an Order of the Court, dated February 26, 2014 and affirmed by the Court on June 29, 2015; or (iii) Alternatively, Compelling Defendants to comply with the Court's February 26, 2014 Order, pursuant to CPLR § 3124, and striking Defendants' Answer with Counterclaims, pursuant to CPLR § 3126; and ([iv]) Granting Plaintiffs such other and further relief as this Court deems just, proper and equitable.

Debtor's Cross-Mot. and Opp'n, Ex. #5 Motion SCT, 1, ECF No. 103.

While it is arguable whether simply restoring the case to a calendar could be considered a ministerial act, the Court need not make that determination today. The request to hold another party in contempt is not clerical. Neither is the request to strike a defendant's answer and counterclaims clerical. Some of the relief requested in Ambesi's motion are clearly not ministerial. The Court finds that Ambesi filed a motion that contains nonministerial requests for relief in State Court in continuation of the State Lawsuit. This Motion to Restore violated the automatic stay. Whether this act was performed with willfulness will need further analysis.

The Court must determine when Ambesi obtained knowledge of the Debtor's bankruptcy and based on that timing whether there are damages to be assessed. Ambesi argues that he did not have knowledge of the Debtor's bankruptcy until the State Plaintiffs' proof of claim was

filed in February 2021. Movants' Opp. to Cross-Mot. at 4. Debtor asserts that Ambesi is treasurer of the Condominium Board. Debtor's Cross-Mot. and Opp'n at 2. Debtor implies that Ambesi held this role at the time the Condominium Board filed its proof of claim. Debtor concludes, as treasurer of the board at this time, Ambesi must have known of her bankruptcy. *Id.* The Court finds this conclusion by the Debtor unsubstantiated by the evidence provided. In support of the argument that Ambesi is the treasurer, Debtor provides two emails from Ambesi. Both emails are dated from 2020. Debtor's Cross-Mot. and Opp'n, Ex. 2 Ambesi Admission, ECF No. 103; Debtor's Cross-Mot. and Opp'n, Ex. 2b bill, ECF No. 103. The Condominium's Proof of Claim was filed in 2017. *See* Claim No. 9-1, 1.

In July 2020, the Debtor replied to an email from State Plaintiffs' counsel explaining that she was in bankruptcy. Debtor's Cross-Mot. and Opp'n, Ex. 6 Debtor Autostay Notice ("Debtor's Email to Movants' Attorney"), ECF No. 103. Ambesi argues that the Debtor did not incur any litigation costs after allegedly firing her attorney in June 2020 and beginning to represent herself in the State Lawsuit. Movants' Opp'n to Cross-Mot. at 3. Ambesi argues that, were the Court to find a willful violation of the stay, the Court should not grant the Debtor's litigation costs as damages.

At this time, the Court has only allegations and assertions, which are not enough evidence to determine when the technical violation of the stay transitioned to a willful violation of the stay. The Court also does not have enough evidence to assess damages and attorney fees. The Court requires an evidentiary hearing to : 1) when did Ambesi have sufficient knowledge of the bankruptcy; 2) what actions, if any, did Ambesi take to reverse any technical violation of the stay; 3) when did the Debtor incur litigation costs; 4) what was the total amount of the litigation

costs; and 5) how much of the Debtor's counsel's request for attorney fees is related to prosecuting the violation of the automatic stay?[8]

  II. *Ambesi's Motion to Lift Stay*

The Court must decide whether to grant Ambesi's Motion to Lift Stay in order to allow the State Lawsuit to continue. Ambesi informs the Court that he is only requesting permission to "to seek judgment in the [State] Lawsuit, including obtaining a permanent injunction against [the State Defendants] and liquidating his claims for damages, which would be treated in the respective bankruptcy action (to the extent the matter is still pending)." Mot. for Relief from Stay at 5.

Section 362(a) of the Bankruptcy code establishes the automatic stay to provide debtors an opportunity to reorganize in bankruptcy. *In re Bally Total Fitness of Greater New York*, 402 B.R. 616, 622 (Bankr. S.D.N.Y. 2009). Section 362(d) of the code provides for lifting of the stay, including for cause. *Id.* The Second Circuit Court of Appeals identified several factors, the *Sonnax* factors, to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other

---

[8] As part of the Cross-Motion, Debtor's attorney requests attorney's fees in the amount of $3,500 for 10 hours of work at a rate of $350 per hour. Debtor's Cross-Mot. and Opp'n at 5. Debtor's counsel has not provided any detail to support this fee request. It is not clear to this Court if this fee includes only the cross-motion for violation of the automatic stay or whether it also includes opposition to relief from the stay.

> proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus. Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990).

Courts are not required to give each factor equal weight or consider every factor. *In re N.Y. Medical Grp. P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001); *In re Sonnax Indus. Inc.*, 907 F.2d at 1286. The relevant factors must be analyzed based on the facts of the case. *In re Residential Cap., LLC*, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014). This Court finds the requisite analysis must focus on factors 10 ("Judicial Economy"), 12 ("Balance of Harms"), and 7 ("Prejudice to Creditors").

Judicial Economy weighs heavily in favor of lifting the stay. The State Plaintiff's complaint is based on state law. The preliminary injunction was issued by a New York State Court. The allegations made by Ambesi suggest that the preliminary injunction may have been violated. Whether or not this is the case requires an evidentiary hearing. Waiting to hold an evidentiary hearing until completion of the bankruptcy would severely prejudice the State Plaintiffs and allow alleged misconduct to be shielded by the stay. To allow this would create both an injustice and a moral hazard. The issue before this Court is not when a court will review these allegations, but which court should do so. The Court finds that the State Court can best interpret the preliminary injunction. *See In re Advanced Min. Sys., Inc.*, 189 B.R. 36, 40 (Bankr. S.D.N.Y 1995) (noting the deference a court is given to its own orders); *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (noting the state court expertise in resolving state law actions).

On the Balance of Harms factor, the Debtor argues continuing the State Lawsuit would cause her harm. The Debtor argues that lifting the stay would cause her emotional and financial damage. Debtor's Cross-Mot. and Opp'n, at 6. The Debtor also raises the issue of litigation costs

to defend herself against the allegations raised by the Plaintiffs.  *Id.*  Courts have found that the expense of continuing a litigation is an insufficient argument to keep a stay in place.  *See In re Keene*, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994).  The Court notes that the Debtor's emotional and financial is harm must be balanced against the interests of the opposing party in concluding the prior litigation.

The Debtor also argues that the case has languished; it has been open since 2013.  Debtor's Aff. at 3.  The Debtor argues that since this case is old, that no harm will befall the Plaintiffs were the case to wait until the conclusion of the bankruptcy.  *Id*.  To support this position, the Debtor states that Alberto Ambesi "doesn't even allege that I have done anything in the recent past to interfere with their business."  *Id*.  The Court disagrees.  It is very clear that Ambesi is alleging recent interference.  As noted above, Ambesi will suffer harm if forced to wait to litigate this alleged violation of the preliminary injunction.

This Court also weighs the Prejudice to Creditors factor.  The Court is concerned that allowing the State Lawsuit to continue may have unforeseen impacts on creditors.  *See In re Taub*, 413 B.R. at 65.  Courts often will limit lifting of the stay in relation to a state court proceeding to allow the litigation to proceed up to the point when potential harms could arise.  *Id.; see also In re Loudon*, 284 B.R. 106 (8th Cir. B.A.P. 2002) ("By allowing the state court to determine liability and damages, a determination that would otherwise require a trial in the bankruptcy court, but limiting the ability . . . to enforce the judgment, the bankruptcy court substantially reduced the potential harm.").  Here, Ambesi is already conceding that he is only seeking to obtain a judicial decision and not enforce a monetary judgment.

Reviewing the relevant *Sonnax* factors, Judicial Economy suggests that this matter is best settled by the Court in which the litigation was initiated.  Even though the Debtor would suffer

the emotional and financial harm of continuing the litigation, the Balance of Harms weighs in favor of lifting the stay. The considerable moral hazard in allowing a debtor to delay a hearing that concerns allegations of violating a court's injunction outweighs the potential harm to the Debtor. The Court's concern over Prejudice to Creditors can be mitigated. The Court lifts the stay requested by Ambesi for the limited purpose of resolving the liability portion of the prior litigation **only**.

   III. *Condominium's Motion for Relief from Stay*

The Condominium moves for relief from stay for cause pursuant to § 362(d)(1) for the purpose of proceeding with a foreclosure action on its Alleged 2021 lien. Where a movant requests relief from say for cause, the movant must initially establish that it is entitled to relief from the stay. *In re Sonnax Indus.*, 907 F.2d at 1285.

In support of the Motion to Lift Stay, the Condominium asserts that it has a common charge lien from January 2021. Mot. for Relief from Stay at 5. By not documenting the lien, the Court only has the word of the Condominium that it filed a common charge lien in January of 2021 in the amount of $6,842.26. *Id*. The Court also only has the word of the Condominium that filing this lien was due to the Debtor not making postpetition payments since August 2019.[9] *Id*. The Court finds that the Condominium has not demonstrated that it is entitled to relief.

If the 2021 lien was filed as asserted by the Condominium, the Court sees this as problematic. A common charge lien is a statutory lien that encumbers a condominium unit when the owner fails to pay common charges. *See AMT CADA Venture LLC v. 455 CPW, LLC*, 992 N.Y.S.2d 844, 846–847 (N.Y. Sup Ct. 2013) (citing N.Y. RPL § 399-z). A condominium's common charge lien is superior to all but taxes and the unpaid balance of a first mortgage of

---

[9] The Debtor disagrees with the Condominium's assertion that she has not provided payment since August 2019 and provides documentation that postpetition payments continued through August of 2020. Debtor's Aff. at 3.

record.  In *80P2L LLC v. U.S. Bank Tr., N.A.*, 150 N.Y.S.3d 23, 25 n.1 (N.Y. App. Div. 2021) (citing N.Y. RPL § 399-z).  A common charge lien is not effective until it is filed in the appropriate recording office.  *In re Eatman*, 181 B.R. 386, 391 (Bankr. S.D.N.Y. 1995).

The order of relief stays "any act to create, perfect or enforce a lien against property of the estate." § 362(a)(4).  Generally, any lien created in violation of 362(a)(4) is *void ab initio*. *In re Westport-Sandpiper Assoc. Ltd P'ship.*, 116 B.R. 355, 358 (Bankr. D. Conn. 1990). Section 362(b)(3) allows an exception to the stay for "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title."  This exception is to be interpreted narrowly.  *Lincoln Sav. Bank, FSB v. Suffolk Cnty. Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*, 880 F.2d 1540, 1547 (2d Cir. 1989).  For § 546(b) to apply, state law must specifically authorize that perfection relates back to a prepetition event.  *In re Westport-Sandpiper* at 358.  A court performing an analysis of the N.Y. state law found that the NY state law authorizes perfection of a common charge lien for prepetition events.  *In re Cohen*, 279 B.R. 626, 636 (Bankr. N.D.N.Y. 2002).  That court found that § 546(b) applies to common charge liens, and therefore a common charge lien filed for prepetition events falls under the § 362(b)(3) exception and is not a violation of the stay under § 362(a)(4).  *See Id.*

The Condominium asserts that this common charge lien was filed due to postpetition arrears not prepetition arrears.  A postpetition recording of this common charge lien for postpetition arrears would make this lien violate § 362(a)(4), and this lien would not be protected by § 362(b)(3).  If the facts meet the assertions, this 2021 lien is *void ab initio*.

The Court will not lift the stay as to the Condominium for lack of demonstrating entitlement to the relief requested.

## Conclusion

For the foregoing reasons, the Court directs the parties to submit a scheduling order for an evidentiary hearing to resolve Debtor's Cross-Motion for Contempt for violation of the automatic stay. The Court grants Alberto Ambesi's motion to lift stay in order to continue the State Lawsuit in State Court as to liability. The Court denies the Condominium's motion to lift stay and declares its lien *void ab initio*. The Debtor shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: March 1, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**